**In re Timothy S. BRUMLIK, Debtor.**

**Bankruptcy No. 95–1468–6B3.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

April 11, 1995.

David Shields, for movant.

Roy L. Beach, for debtor.

Carl Spate, for Boston Investors Group, Inc.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the final evidentiary hearing on the Motion for Relief from Stay filed by City National Bank of Florida ("City National") (Doc. No. 4). Appearing before the Court were David Shields, attorney for the Movant; Roy Beach, attorney for the Debtor; and Carl Spate, attorney for Boston Investors Group, Inc. After receiving testimony, exhibits and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Timothy S. Brumlik (the "Debtor") and his spouse filed for relief under Chapter 11 of the Bankruptcy Code in the Middle District of Georgia on April 9, 1991. The case was transferred to the Middle District of Florida on July 15, 1991. Subsequently, the case was converted to a Chapter 7 case, Case No. 91–03720–6C7 (the "Chapter 7 case"). No discharge has been entered in that case.

In August 1983, the Debtor and his spouse purchased home subject to a first mortgage subsequently assigned to Boston Investors Group Inc. and Cambridge Capital Corporation. In August 1984, the Debtor and his spouse obtained a second mortgage on the property through City National which was modified pursuant to a September 22, 1987 Mortgage Modification and Conversion Agreement. The Debtor and his spouse defaulted under the terms of the first and second mortgages. The first mortgagee alleges the Debtor and his spouse failed to make the payment timely when due on February 1, 1991 and failed to make all payments subsequent to October 1, 1991, leaving the principal sum due of $401,310.79 plus inter-

est, costs, and attorney fees.[1] City National alleges it failed to receive a timely payment on January 30, 1991, and failed to receive payments subsequent to September 9, 1991, except for a few interest payments in late 1994, leaving the principal sum due of $327,-004.16 plus interest, costs, and attorney fees.

City National, the Trustee, and the Debtor entered a Stipulation on Movant's Motion for Relief from Stay (the "Stipulation") in the Chapter 7 case. The Debtor consented to relief from stay and stipulated that:

> In no event shall Debtors or Trustee take any action to delay a foreclosure sale of the property beyond November 21, 1994, if by that date all of the requirements for the sale of the property set forth in paragraph 19 of this Stipulation have not been completed.

The Court entered an Order Granting City National's Motion for Relief from Stay on May 26, 1994 in the Chapter 7 case. The Order approved the stipulation, granted relief to City National in accordance with the Stipulation, and provided: "The parties shall comply with the terms of the Stipulation."

City National scheduled a foreclosure sale pursuant to a final judgment in Seminole County Circuit Court, under Case No. 94–1208–CA–14–B, pursuant to Movant's second mortgage on the homestead owned by the Debtor and his wife (the "foreclosure case"). The foreclosure sale was set for Thursday morning, March 30, 1995, at 11:00 a.m. The Debtor filed this petition for relief under Chapter 13 of the Bankruptcy Code on the eve of the foreclosure sale, March 29, 1995, at approximately 3:00 p.m. The Chapter 13 filing was an attempt to delay City National's foreclosure sale beyond November 21, 1984, a breach of the Stipulation, and a violation of the Order requiring the parties to comply with the Stipulation.

At an emergency hearing on March 30, 1995, this Court entered an Order granting Movant partial relief from stay to allow the scheduled foreclosure sale to be take place with the condition that no certificate of title or sale was to be issued until further order of this Court at a final evidentiary hearing which was held April 7, 1995.

Pursuant to the Stipulation, the Debtor and his wife are indebted under the first mortgage and the second mortgage in excess of $750,000.00. The Debtor and his spouse are indebted to the first mortgagee[2] in the sum of $547,063.38 plus interest accruing at the rate of $121.23 daily. City National is owed the sum of $450,041.25 plus attorney fees subject to court approval. Federal tax liens secured against the property are in excess of $1,000,000.00. The Debtor contends the tax obligations will be satisfied in the pending Chapter 7 case but as of the date of the filing of the Chapter 13 petition, the taxes are still due and owing.

The Debtor has made allegations he has a claim against one of the mortgage holders which is unsupported by documentary evidence. No lawsuit has been filed as to that claim. All events giving rise to the liability as to the mortgages and secured tax liability occurred prior to the filing of the current bankruptcy petition and are not contingent.

### CONCLUSIONS OF LAW

The automatic stay is governed by Section 362 of the Bankruptcy Code which provides in pertinent part,

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d). Once a moving party establishes "cause" for relief from stay, the burden then shifts to the debtor to demonstrate that he is entitled to protection of the automatic stay. *Goya Foods v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. 90

---

**1.** The exact payoff required of City National to the first mortgagee is currently the subject of litigation in state court but is based on the principal sum of $401,210.79.

**2.** Boston Investors Group, Inc. and Cambridge Capital Corp. are successors to Fairfield Affiliates, referenced as the first mortgagee in the Stipulation.

(D.P.R.1993), *aff'd* 23 F.3d 395 (1st Cir.1994); 11 U.S.C. § 362(g). Whether "cause" exists for relief from stay is a question dependent upon facts as adduced at the hearing and guided by a trial court's discretion. *Unanue–Casal*, 159 B.R. at 94. Where "cause" exists, relief must be granted. *Id.*

City National bases its contention of "cause" on breach of the Stipulation, violation of the Order approving said Stipulation, and exceeding the threshold for eligibility for Chapter 13.

■ A court order properly entered consistent with due process is entitled to full faith and credit. *Shron v. M & G Promo Servs. (In re Anthony Sicari, Inc.)*, 151 B.R. 60 (S.D.N.Y.1993). As an order of this Court, the May 27, 1994 Order Granting City National Bank's Motion for Relief from Stay requiring the parties to comply with the terms of the Stipulation is entitled to full faith and credit in this case.

■ By filing for relief under Chapter 13 of the Bankruptcy Code immediately prior to the scheduled foreclosure sale, the Debtor breached the Stipulation's provisions precluding any action to delay a foreclosure sale beyond November 21, 1994, and violated the Order requiring the parties to comply with the terms of the Stipulation.

■ The Debtor's first and second mortgages on the property exceeded $750,000.00. In addition, a tax lien of more than $1,000,000.00 is secured by the property. Section 109(e) of the Bankruptcy Code governs eligibility under Chapter 13. It provides,

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). "A debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *In re Loya*, 123 B.R. 338, 340 (9th Cir. BAP 1991); *See also In re Verdunn*, 160 B.R. 682 (Bankr.M.D.Fla.1993). A debt is contingent only if a defined future event must happen to make it noncontingent. *Verdunn*, 160 B.R. at 686.

■ The Debtor's property is secured by first and second mortgages exceeding $750,000.00 and a $1,000,000.00 federal tax lien. The Debtor has made allegations he has a claim against one the mortgage holders which is unsupported by documentary evidence. No lawsuit has been filed as to that claim. Prior to the filing of the bankruptcy petition, the liability to the first and second mortgage holders was established pursuant to the Stipulation. In addition, the federal tax liens secured by the property were established. No defined future event must occur to establish liability. All events giving rise to the liability as to the mortgages and secured tax liability occurred prior to the filing of the current bankruptcy petition and are not contingent. Therefore, the Debtor fails to meet the threshold requirements provided by 11 U.S.C. § 109(e).

■ City National established "cause" for granting relief from the stay by demonstrating the Debtor's breach of the Stipulation's provisions precluding any action to delay a foreclosure sale beyond November 21, 1994, and by the Debtor's violation of the Order requiring the parties to comply with the terms of the Stipulation. In addition, failure to meet the eligibility requirements for filing for relief under Chapter 13 of the Bankruptcy Code constitutes "cause" for granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d). The movant establishing "cause" for relief from the stay, the burden shifted to the Debtor, who failed to demonstrate he is entitled to protection of the automatic stay.

Accordingly, the Motion for Relief from Stay filed by City National Bank of Florida is due to be granted.

## *ORDER*

In conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED and DECREED** that the Motion for Relief from Stay filed by City National Bank of Florida is **GRANTED** for cause pursuant to 11 U.S.C. § 362(d)(1) as to the property described in Exhibit "A" to this Order; it is further

**ORDERED, ADJUDGED and DECREED** that the automatic stay is hereby modified to permit Movant to take those steps permitted by law to continue to completion the foreclosure case and to dispose of the property; it is further

**ORDERED, ADJUDGED and DECREED** that the Clerk of the Seminole County Court in the foreclosure case is permitted to issue forthwith the certificate of title, the certificate of sale, and any other document necessary to complete the foreclosure sale in the foreclosure case; and it is further

**ORDERED, ADJUDGED and DECREED** that this Order granting relief from the automatic stay is entered for the sole purpose of allowing movant to obtain an *in rem* judgment against the property described in this order. Movant shall not seek or obtain an *in personam* judgment against the Debtor.

### EXHIBIT A

From the Northwest corner of Section 23, Township 21 South, Range 29 East, run S 89°52′22″ E 264 feet to the Northeast corner of that certain parcel of land described in Deed Book 82, Page 273, Public Records of Seminole County, Florida; run thence N 00°01′55″ E 1.15 feet to the Southwest corner of that certain parcel of land described in Official Records Book 792, Page 136, Public Records of Seminole County, Florida; run thence S 89°38′32″ E 394.02 feet to the Southeast corner of said description; run thence N 47°23′09″ E 13.59 feet to the Northwest corner of that certain parcel of land as described in deed dated July 9, 1970 from Spring Valley Farms, Inc. to Harold R. Walsh; run thence S 89°39′55″ E 252.99 feet along the North boundary of said description to the Northwest corner of that certain parcel of land described in Official Records Book 956, Page 1871, Public Records of Seminole County, Florida; run thence S 00°08′12″ W 560.62 feet along the Westerly boundary of said description and the southern prolongation thereof; run thence N 89°39′55″ W 175.00 feet for the *POINT OF BEGINNING* thence continue N 89°39′55″ W 571.29 feet to the East boundary of the West 175.00 feet of the NW ¼ of the NW ¼ of the aforesaid Section 23; run thence S 00°08′53″ W along said East boundary 773.20 feet to the Southeast corner of the West 175.00 feet of said NW ¼ of the NW ¼ of Section 23; run thence S 89°54′54″ E 114.39 feet along the South boundary of said NW ¼ of the NW ¼ of Section 23 to the Southeast corner of that certain parcel of land as described and recorded in Deed Book 82, Page 262, Public Records of Seminole County, Florida; run thence N 45°11′25″ E 685.74 along the Southerly boundary of said parcel to an angle point in said Southerly boundary; run thence S 89°54′54″ E 529.71 feet along said Southerly boundary to a point on the Westerly right-of-way line of Wymore Road, said point being 25.00 feet Westerly of, when measured at right angles to, the East boundary of the NW ¼ of the NW ¼ of said Section 23; run thence N 00°08′12″ E 215.90 feet parallel with said East boundary and along said Westerly right-of-way line; run thence S 89°50′56″ W 383.00 feet; run thence S 88°56′22″ W 175.04 feet; run thence N 00°08′05″ E 75.89 feet to the *POINT OF BEGINNING.*

Containing 10.4888 acres.

Exhibit "A" to Mortgage Deed between Timothy S. Brumlik and Patricia Brumlik, his wife, as Mortgagors and City National Bank of Florida as mortgagee, dated August 23, 1984.