Carlos **GUZMAN**, Rafael Parache, Robert Figueroa, Leon C. Huguenot, Milton Ayala and Angel Fernandez, Plaintiffs–Appellees,

v.

**LOCAL 32B–32J, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO,** Defendant–Appellant.

No. 849, Docket 95–7880.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1995.

Decided Dec. 13, 1995.

Ronald Raab, New York City (Ira A. Sturm, Manning, Raab, Dealy & Sturm, New York City, on the brief), for defendant-appellant.

Arthur Z. Schwartz, Kennedy Schwartz & Cure, New York City, for plaintiffs-appellees.

Before: NEWMAN, Chief Judge, CARDAMONE and CABRANES, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal presents the infrequently litigated issue of whether an appeal from a preliminary injunction is moot where the precise action ordered has been taken but the merits of the dispute nevertheless remain pending. Local 32B–32J ("the Union") appeals from the September 6, 1995, order of the District Court for the Southern District of New York (Lawrence M. McKenna, Judge) issuing a preliminary injunction. The Union was enjoined from violations of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 481(c) (1994), and specifically required to immediately mail, at its own expense, campaign literature for Carlos Guzman that responded to what Guzman contends was a mailing on behalf of incumbent officials of the Union. The Union contends that it had no duty under section 481(c) to pay for Guzman's campaign mailing because the Union's literature was not a campaign document, and at the time that the literature was mailed, Guzman was not a bona fide candidate entitled to equal treatment by the Union. Though the issue of the proper allocation of the cost of the mailing remains for plenary consideration by the District Court, we dismiss the appeal as moot because, now that the election has been held, there is no

pending issue as to whether the Union may be ordered to act prior to the election.

### Facts

Elections for officers of the Union were scheduled for September 21, 1995. Seven months earlier, in February 1995, the Union mailed to all members a 140–page book entitled *Local 32B–32J: Sixty Years of Progress* ("the History"). The Union claimed that it hoped the book, which described the history of the Union since its inception, would "embolden[ ] [the members] to face the vast challenges that lie ahead." Praise of the incumbent board appears in substantial portions of the book. The book also contains a brief discussion of the 1992 election, in which Guzman had mounted the first opposition candidacy in the Union's history. The History praises the actions of Union President Gus Bevona and suggests that the Guzman slate was a puppet for employers. Guzman was not mentioned by name.

Guzman formally announced his candidacy by letter to the board on April 7, 1995, although for some time previously he had publicly opposed Bevona and had announced to the press his intention to run. By letter dated May 30, 1995, he objected to the mailing of the History and demanded a reciprocal mailing. On August 2, 1995, he filed his complaint seeking an injunction.

In granting the preliminary injunction, Judge McKenna found that (1) the History, sent seven months before the election, was campaign literature supporting Bevona, and (2) Guzman was a bona fide candidate at the time of the Union mailing in February.

The Court ordered the Union to immediately mail Guzman's campaign literature at Union expense. The literature was mailed and the election occurred on September 21, 1995, as scheduled. The Guzman slate was defeated.

### Discussion

The injunction was issued pursuant to the LMRDA, which states, in part:

> [W]henever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.

29 U.S.C. § 481(c).

Under the LMRDA, any bona fide candidate has a right to mail campaign literature to union members at his own expense.[1] The Union concedes that Guzman was a bona fide candidate by April 7, 1995, months before his responsive mailing. At least by that time, Guzman was clearly entitled to conduct a mailing; the only issue was whether the Union or Guzman was obligated to pay for it. For purposes of a preliminary injunction, the District Court found that the Union had this obligation and ordered the Union to mail Guzman's literature at Union expense.

By the time this appeal was heard, Guzman's literature had been mailed and the election had occurred. Despite the apparent mootness of the appeal, both sides have contested the merits of the ultimate issue: whether Guzman or the Union is liable for the costs of mailing Guzman's literature. When queried at oral argument, the Union appeared to be concerned that this appeal from the preliminary injunction is its sole opportunity to have an appellate court reject the District Court's "findings" that the Union's History entitled Guzman to have his literature mailed at the Union's expense. The parties' contentions on appeal misconceive the relationship between the pending appeal and the ultimate issue on the merits.

The issue sought to be adjudicated on the pending appeal is whether the prelimi-

---

**1.** Section 481(c) provides that

every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization ... to comply with all reasonable

requests of any candidate to distribute by mail or otherwise *at the candidate's expense* campaign literature in aid of such person's candidacy to all members in good standing.....

29 U.S.C. § 481(c) (emphasis added).

nary injunction was properly ordered. That issue would normally require consideration of whether the District Court had erred in concluding that the plaintiff had shown irreparable injury and a probability of success on the merits. A defendant under the compulsion of a preliminary injunction at the time of an appeal obviously has a live interest in having the injunction lifted. However, where, as here, the injunction orders a step that cannot be undone—mailing Guzman's literature at Union expense *before* the election—there is no longer any live controversy as to whether the District Court exceeded its discretion in issuing the preliminary injunction. If a party has been wrongfully enjoined, *i.e.,* ordered to do something it had a right to refrain from doing or to cease doing something it had a right to continue doing, it has a full opportunity upon plenary consideration of the complaint to vindicate its interests.

 We have referred to that plenary consideration as a "'wrongfulness' inquiry," *see Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1054 (2d Cir.1990), by which we meant that the court must consider whether the enjoined party had a legal right to act (or not act) as it intended before an injunction altered its conduct. But we carefully distinguished in *Blumenthal* between the issue of whether the district court exceeded its discretion in issuing the injunction and the ultimate issue of whether the enjoined party had the legal right to act as it wished. As we observed,

> A party has been "wrongfully enjoined" under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act.... The conclusion that an injunction later dissolved was "wrongful," in the sense that the party had the right to do the enjoined act, does not necessarily imply that the district court abused its discretion in granting the relief in the first place.... "[A] temporary injunction may be wrongfully issued although the issuance may not have been improvident as an abusive exercise of the trial court's discretion." *Atomic Oil Co. v. Bardahl Oil Co.,* 419 F.2d 1097, 1099 (10th Cir.1969), *cert. denied,* 397

U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970)....

910 F.2d at 1054 (citations omitted).

In this case, the pending appeal from the issuance of the preliminary injunction would bring up for review only the question of whether the preliminary injunction order exceeded the District Court's discretion. That issue is no longer a live controversy, since there is no preliminary injunction outstanding that could be terminated prior to the required event—the mailing at the Union's expense prior to the election. Thus, it would be pointless now to make the review appropriate to an appeal of a preliminary injunction, an inquiry that would include consideration of whether the plaintiff had shown the requisite probability of success. At this point, the issue is not whether the plaintiff is *probably* entitled to have the Union pay for the mailing; it is whether the Union is legally obligated to pay, *i.e.,* whether Guzman had a legal right to compel a mailing, at the Union's expense, because the Union had mailed the History to its members. That is the ultimate issue on the merits. That issue turns on several factors, including when the campaign period began, whether the History was campaign literature, when Guzman became a bona fide candidate, all of which should be resolved only after the District Court has conducted a full evidentiary hearing.

In some circumstances, issues related to a preliminary injunction are adjudicated on appeal despite the occurrence of the event that marked the time limit of the injunction. That may occur, for example, where an issue is likely to recur but evades appellate review because of the brevity of the injunction's duration. Limited review might also be appropriate where the appellate court considers whether the District Court had jurisdiction, since the existence of jurisdiction is a predicate to the district court's consideration of the ultimate merits of the dispute. That is what occurred in *Blumenthal,* where we adjudicated the jurisdiction of a district court to issue a preliminary injunction pending arbitration. 910 F.2d at 1051–54. *Blumenthal* might also have been an instance of adjudication because the jurisdictional issue was like-

ly to recur yet would evade review. The arbitration occurred just three weeks after the District Court's order. Determining district court jurisdiction in such circumstances was obviously important for subsequent cases where the interval between injunction and arbitration could be expected to be equally brief.

In dismissing this appeal but leaving the matter for plenary consideration by the District Court, we do not intend to permit the plaintiff to pretermit a ruling on the merits by abandoning the lawsuit. The lawsuit remains pending, and the Union should be afforded an opportunity, if needed, to seek leave to file a counterclaim to secure an adjudication of its claim for recovery of the money it spent to comply with the preliminary injunction.[2]

Accordingly, we dismiss the appeal as moot.

**2.** In leaving the merits for plenary consideration, we express no views on the significance, if any, of the fact that the plaintiff did not post a bond pursuant to Fed.R.Civ.P. 65(c), *see W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber Workers*, 461 U.S. 757, 770 n. 14, 103 S.Ct. 2177, 2186 n. 14, 76 L.Ed.2d 298 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."), or the fact that the Union made no request that such a bond be posted, nor do we consider whether recoupment of the sums expended, if ultimately determined to be warranted, would be considered "damages."